# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| DONEY MATHIS, | |
| Plaintiff, | CIVIL ACTION NO.: 6:15-cv-122 |
| v. | |
| WARDEN CHATMAN; STANLEY WILLIAMS; MS. WEST; and ROBERT TOOLE, | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Hays State Prison in Trion, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement while housed at Georgia State Prison ("GSP") in Reidsville, Georgia. (Doc. 1.) Defendants Chatman, Williams, and Toole filed a Motion to Dismiss. (Doc. 20.) Plaintiff filed a Response, (doc. 24), and Defendants Chatman, Williams, and Toole filed a Reply in Support of their Motion, (doc. 25). Defendant West also filed a Motion to Dismiss. (Doc. 22.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motions to Dismiss, (docs. 20, 22), **DISMISS** Plaintiff's Complaint, based on Plaintiff's failure to exhaust his administrative remedies prior to filing of his Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*. The Court should **DISMISS** Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order, (doc. 7) as moot. Defendants' Motion to Stay Discovery and Motion to Stay Proceedings, (docs. 21, 23), are **DENIED as moot**.

**BACKGROUND**

Plaintiff filed this cause of action pursuant to 42 U.S.C. § 1983 on October 13, 2015, contesting certain conditions of his confinement at GSP in Reidsville, Georgia. (Doc. 1.) Specifically, Plaintiff alleges that he received inadequate mental health care and treatment at GSP in violation of the Eighth Amendment. Plaintiff also avers that GSP's policy requiring that inmates transferred to GSP due to "minor mental health issues" be housed in segregation for indefinite periods of time violates the Eighth Amendment's proscription against cruel and unusual punishment.[1]

On September 5, 2012, Plaintiff was transferred to GSP to receive mental health treatment for depression. (Id. at p. 8). Plaintiff alleges that—per GSP's Standard Operating Procedure—he was placed in segregation upon his arrival at GSP. (Id. at p. 6.) Plaintiff contends that his placement in segregation exacerbated his existing mental health issues, caused him to develop claustrophobia, and caused him to experience seizures and anxiety attacks. (Id. at pp. 6, 10–13.) Plaintiff further alleges that he did not receive mental health treatment for these conditions and had no access to a psychiatrist while confined in segregation. (Id. at pp. 10–13.) Plaintiff avers his placement in segregation also caused him to develop additional physical health problems, including high blood pressure and a change in his physical appearance. (Id. at p. 13).

Plaintiff contends that, during his confinement in segregation, he directed multiple letters, grievances, and medical requests to Defendants Chatman, Stanley, Toole, and West. (Id. at p. 11.) Specifically, Plaintiff filed three (3) grievances during his incarceration at GSP regarding his lack of medical care and treatment: Grievance Nos. 169940, 202319, and 208015. (Doc. 22-2, p. 4.) In Grievance Nos. 169940 and 202319, Plaintiff complained that he did not receive

---

[1] Plaintiff contends that other prisons in Georgia, such as Phillips State Prison, Hayes State Prison, Valdosta State Prison, and Baldwin State Prison, provide mental health treatment but do not require that mentally ill inmates be placed in segregation during that treatment. (Doc. 1, p. 16.)

2

treatment for claustrophobia. (Id. at pp. 23, 25.) The first grievance, No. 169940, was denied. (Id. at p. 24.) Plaintiff received notification of this denial on May 21, 2014, but he did not file an appeal. (Id. at p. 4.) The second grievance, No. 202319, was denied on September 11, 2015, and Plaintiff appealed the denial of this grievance. (Id.) As of October 13, 2015, the appeal remained pending. (Id.) On October 8, 2015, Plaintiff filed Grievance No. 208015 regarding a housing assignment in which he references a lack of treatment for his mental health conditions. (Id. at p. 5.) Grievance No. 208015 was denied and Plaintiff did not file an appeal. (Id.)

The Court directed service of Plaintiff's Complaint on Defendants by Order dated January 14, 2016. (Doc. 13.) Defendants then filed the instant Motions to Dismiss.

## DISCUSSION

Defendants raise several grounds for dismissal of Plaintiff's Complaint in their Motions. First, Defendants assert that Plaintiff failed to exhaust his administrative remedies prior to filing his Complaint. (Doc. 20-1, p. 4; Doc. 22-1, p. 4.) Next, Defendants Chatman, Toole, and Williams contend that (1) Plaintiff's Eighth Amendment claims arising prior to October 6, 2013 are untimely; and (2) Plaintiff is not entitled to injunctive relief on his claims. (Doc. 20-1, pp. 8–11.) Defendant West further contends that Plaintiff fails to state a claim of deliberate indifference against her. (Doc. 22-1, p. 7.) Plaintiff filed a Response in which he argues that he did not fail to exhaust his administrative remedies because "administrative officials are not processing some and not answering other grievances in a timely manner." (Doc. 24, p. 2.)

As set forth below, the undersigned agrees Plaintiff failed to properly exhaust his administrative remedies prior to filing this Complaint, and Defendants' Motions are due to be granted on this basis. Consequently, it is unnecessary to address the remaining grounds for dismissal in Defendants' Motions.

**I. Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted).

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in

4

conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

## II. Exhaustion Requirements

### A. Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523; see also O'Brien v. United States, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require

more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). Nevertheless, the purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### B. The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001. This SOP no longer requires an inmate to attempt to informally resolve his complaint before filing a formal grievance. (Doc. 22-2.) An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally." (Id. at p. 11.) An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance." (Id. at p. 13.) The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. (Id. at p. 16.) An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original

grievance; or the time allowed for the warden's decision has expired. The inmate has seven (7) calendar days in which to file this appeal. (Id. at p. 17.) The Commissioner has 100 calendar days after receipt to render a decision. (Id.) Time limits may be waived for good cause. (Id.)

With these standards and procedures in mind, the Court now addresses Defendants' argument that Plaintiff did not exhaust his administrative remedies as to his claims against them.

### III.    Assessment of Plaintiff's Exhaustion

Defendants assert Plaintiff filed only three grievances pertinent to the allegations in his Complaint while housed at Georgia State Prison. Defendants note that each of these grievances—Nos. 169940, 202319, and 208015—were denied. (Doc. 20-1, p. 3; Doc. 22-1, p. 6.) Defendants allege that Plaintiff failed to appeal the denial of Grievance Nos. 169940 and 208015. (Id.) Though Defendants agree that Plaintiff appealed the denial of Grievance No. 202319, they contend that because that appeal remained pending on October 13, 2015, the date Plaintiff filed this action, he filed his Complaint prematurely. (Id.) Accordingly, Defendants maintain Plaintiff failed to properly exhaust his administrative remedies as to each of these grievances prior to filing this cause of action, as set forth in the Georgia Department of Corrections' grievance procedures. (Id.) Defendants offer the Affidavit of Jacquelyn Ayeni, a counselor and the Grievance Coordinator at Georgia State Prison, in support of their arguments. (Doc. 22-2.)

In response, Plaintiff states that he was unable to properly exhaust his administrative remedies because "administrative officials are not processing some and not answering other grievances in a timely manner." (Doc. 24, p. 2.) Defendants counter that Plaintiff's vague allegation does not address his failure to appeal Grievances Nos. 169940 and 208015, nor does it excuse his premature submission of the instant Complaint prior to his exhaustion of

8

administrative remedies. (Doc. 25.) Defendants further aver that, even had Plaintiff properly exhausted his administrative remedies, none of the grievances cited address actions taken by the named Defendants. (Id.)

### A. Formal Grievance Number 169940

Plaintiff filed Formal Grievance Number 169940 on March 26, 2014, alleging that he had not received treatment for claustrophobia. (Doc. 20-4, p. 22). This grievance was denied, (id.), and Plaintiff did not appeal this denial. (Doc 22-2, p. 4.)

### B. Formal Grievance Number 202319

Plaintiff filed Formal Grievance Number 202319 on August 18, 2015, alleging that he was "being refused medical treatment . . . for [his] claustrophobia." (Doc. 20-4, p. 24.) Plaintiff asserted his condition was deteriorating and that he needed immediate treatment. (Id.) This grievance was denied on the basis that he had no diagnosis of claustrophobia. (Id.) Plaintiff appealed the denial of Grievance 202319 on September 11, 2015. (Id.) The date on which Plaintiff was due a response to his appeal was November 25, 2015. (Id.) Plaintiff filed his Complaint in this Court on October 13, 2015.

### C. Formal Grievance Number 208015

Plaintiff then filed Formal Grievance Number 208015 on October 8, 2015, in which he complained that he had been confined to segregation for approximately sixteen (16) months for no reason. (Id. at p. 26.) This Grievance was denied on November 18, 2015. Plaintiff received notification of this denial on November 20, 2015, but failed to file an appeal. (Id.; Doc. 20-2, p. 5.)

### D.      Whether Plaintiff's Formal Grievances Constitute Exhaustion

The filing of Grievance Nos. 169940 and 208015 and Plaintiff's appeal of the denial of Grievance No. 202319 do not satisfy his obligation to have exhausted his administrative remedies pertaining to his claims against Defendants prior to filing his Complaint. As to Grievance Nos. 169940 and 208015—even accepting as true Plaintiff's generalized allegation that administrative officials do not timely responded to grievances or appeals—Plaintiff did not exhaust his administrative remedies under the first Turner step.

First, Defendants contend that Plaintiff did not file an appeal of the denials of Grievance Nos. 169940 and 208015, as required by the SOP, and Plaintiff does not dispute this fact. Rather, Plaintiff vaguely complains that administrative officials do not respond to grievances in a timely manner. However, Plaintiff may not bypass the established administrative remedies procedure simply because he does not receive responses to his grievances as quickly as he would prefer. Even if officials had failed to answer his grievances in a timely manner, Plaintiff would have still been required to file an appeal of any unanswered grievances before filing a Complaint in this Court. Bettencourt v. Owens, 542 F. App'x 730, 734 (11th Cir. 2013) ("Despite [the plaintiff's] protestations to the contrary, when the warden failed to respond to the formal grievance within the allotted thirty-day period [the plaintiff] was required to pursue an appeal in order to exhaust his claim."); Milton v. Fleckenstein, No. 6:10-CV-377, 2011 WL 208310, at *1 (M.D. Fla. Jan. 21, 2011) ("although Plaintiff never received responses to his formal grievances, grievances must be pursued through to the final level, even where no response is received.").

Plaintiff has not disputed that he failed to appeal the denial of Grievance Nos. 169940 and 208015. There is nothing before the Court indicating Plaintiff filed an appeal or otherwise pursued these grievances further after their denial. Consequently, under the first Turner step,

10

even accepting Plaintiff's contention as true, Plaintiff did not comply with SOP IIB05-0001 as to Grievance Nos. 169940 and 208015. Additionally, Plaintiff only filed Grievance Number 208015 five days before he filed this lawsuit. Thus, he was still awaiting an initial response to that grievance at the time he commenced this action. For all of these reasons, Plaintiff cannot be considered to have exhausted his administrative remedies through Grievance Nos. 169940 and 208015 before filing this action.

As for Grievance No. 202319, unlike Grievance Nos. 169940 and 208015, the parties agree that Plaintiff filed an appeal of the denial of this Grievance. Nevertheless, the undisputed evidence before the Court shows that Plaintiff filed this instant Complaint while his appeal of Grievance No. 202319 remained pending. (Doc. 22-2, p. 4.) Before filing his Complaint, Plaintiff was required to (1) await a response to his appeal; or (2) wait until the time to receive a response elapsed. As noted in his grievance form, November 25, 2015 was the date on which Plaintiff was due a response. (Doc. 20-4, p. 24.) As Plaintiff filed this Complaint on October 13, 2015, it is apparent Plaintiff did not wait until receiving a response to his appeal or wait until the deadline to receive that response passed. Accordingly, Plaintiff did not properly exhaust his administrative remedies through Grievance No. 202319 prior to filing his cause of action. Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.")

Further, under the first Turner step, Plaintiff does not establish that GSP officers were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the GSP grievance process was so complicated that it was "essentially unknowable," or that GSP officers "thwart[ed] inmates from taking advantage of a grievance process through machination,

11

misrepresentation, or intimidation." Ross, ___ U.S. ___, 136 S. Ct. 1850, 1862 (June 6, 2016). Thus, even if the hurdles to exhaustion existed as Plaintiff claims, they did not rise to the height of unavailability that the Supreme Court has contemplated to excuse a prisoner from exhausting his remedies.

Plaintiff's claim of unavailability withers even more readily when subjected to the crucible of examination the second Turner step requires. Again, under that step, the Court resolves any disputed factual issues and then assesses, under those findings, whether the prisoner has exhausted his available administrative remedies. Turner, 541 F.3d 1083. Having reviewed all of Plaintiff's and Defendants' filings, the Court finds Defendants' account of the availability of administrative remedies more credible than Plaintiff's.

In support of their Motion to Dismiss, Defendants offer the affidavit of GSP Grievance Coordinator Jacquelyn Ayeni. (Doc. 22-2.) Ayeni states that, upon admission to GSP, all prisoners receive an oral explanation of the grievance process and an outline of the grievance process. (Id. at p. 3.) She further testifies that all Georgia Department of Corrections prisons have a grievance procedure available to all offenders and that a computer database system logs and tracks a prisoner's grievances. (Id. at pp. 3–4.) Moreover, Plaintiff's grievance history belies any contention that the administrative remedies were not available to him. Since September 24, 2012, he has filed twelve grievances, and as laid out above, he filed three grievances about medical care and mental health treatment at the prison. (Doc. 20-4, p. 1.) While Plaintiff complains about the processing of these grievances, he has received responses on these grievances. Furthermore, even if the Warden does not timely respond, Plaintiff has the right to appeal to the Commissioner. Thus, it cannot be said that prison officials made the grievance process unavailable to him.

Put succinctly, even accepting Plaintiff's version of the facts as true and viewing all of the facts in the light most favorable to Plaintiff, he did not exhaust his administrative remedies prior to filing his Complaint. For these reasons, the Court should **GRANT** these portions of Defendants' Motions to Dismiss, (docs. 20, 22), and **DISMISS** Plaintiff's Complaint, without prejudice. As a result, it is unnecessary to address the remaining portions of Defendants' Motions.

## IV. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[2] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or

---

[2] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion to Dismiss, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motions to Dismiss, (docs. 20, 22), **DISMISS** Plaintiff's Complaint, without prejudice, based on Plaintiff's failure to exhaust his administrative remedies prior to the filing of his Complaint, and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*. Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order, (doc. 7), and Defendants' Motion to Stay Discovery and Motion to Stay Proceedings, (docs. 21, 23), are **DENIED as moot**.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 15th day of July, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA